UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | |
|---|---|
| ZACHARY TYLER MARTIN, | ) |
| *Plaintiff,* | ) ) ) Case No. 3:22-cv-322 |
| v. | ) ) Judge Curtis L. Collier |
| POLARIS, INC., *et al.*, | ) ) |
| *Defendants.* | ) |

# **M E M O R A N D U M**

Before the Court is Plaintiff Zachary Martin's motion to exclude the testimony of three expert witnesses, Dr. Manuel Meza-Arroyo, Mr. Todd Hoover, and Mr. Gary Rogers. (Doc. 58.) Defendants, Polaris Inc., Polaris Industries Inc., and Polaris Sales Inc. (collectively, "Polaris" or "Defendants"), opposed the motion (Doc. 67), and Plaintiff replied (Doc. 99).

Plaintiff moves to exclude Dr. Meza-Arroyo, Mr. Rogers, and Mr. Hoover from testifying at trial, and alternatively, for the Court to "issue a pre-trial order excluding . . . opinions that fail to satisfy the reliability requirements" of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (Doc. 58 at 8.) Plaintiff argues Dr. Meza-Arroyo should be excluded from testifying because he is not qualified and there is no evidentiary basis for his opinions. (*Id*. at 3–4.) Plaintiff argues Mr. Rogers and Mr. Hoover should be excluded from testifying because there is no basis for their opinions. (*Id*. at 4–8.) The Court finds a hearing on this motion is unnecessary. For the reasons set out below, the Plaintiff's motion will be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This case arises from an incident involving a utility terrain vehicle (UTV)—a 2019 RZR XP 1000 EPS—designed and manufactured by Polaris ("the RZR"). (Doc. 56 at 5; Doc. 14 ¶ 12.) The vehicle was allegedly altered between leaving Polaris's control and the incident at issue. (Doc. 56 at 5.) Plaintiff was injured while riding as a passenger in the altered RZR when the vehicle overturned. (*Id.*) According to the allegations in the amended complaint, "[t]he forces involved caused Plaintiff to lose his grip on the 'passenger hand hold,' causing Plaintiff's right arm to be ejected from the vehicle." (Doc. 14 ¶ 17.) Plaintiff's right arm was "crushed by the roll cage" and his injuries resulted in below-the-elbow amputation of the arm. (*Id.* ¶ 19.) Plaintiff filed an amended complaint against Defendants on January 5, 2023, asserting claims for strict liability, breach of express and implied warranties, and negligent misrepresentation.[1] (*Id.* ¶¶ 27–48.)

## II. APPLICABLE LAW

Under Federal Rule of Evidence 702, a witness with sufficient knowledge, skill, experience, training, or education may testify in the form of an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 reflects decisions by the United States Supreme Court in *Daubert*, 509 U.S. 579, and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), which establish the district courts' role as gatekeepers to exclude unreliable expert testimony. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008) (discussing *Daubert* and *Kumho*). The Court does not

---

[1] Plaintiff included a fourth claim for punitive damages, which is not a cause of action, but rather part of the remedy requested. (Doc. 1 ¶¶ 49–50.)

decide whether an opinion is correct, but only whether it rests on a reliable foundation. *Id.* at 529–30. Further, "[i]t is the proponent of the testimony that must establish its admissibility by a preponderance of proof." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

The Court of Appeals for the Sixth Circuit has identified three requirements under Rule 702: (1) the proposed expert must have the requisite qualifications, whether it be through knowledge, skill, experience, training, or education; (2) the proposed testimony must be relevant, that is, it will help the trier of fact to understand the evidence or to determine a fact in issue; and (3) the proposed testimony must be reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. Relevant testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quoting Fed. R. Evid. 702). A nonexclusive list of factors to consider in assessing reliability includes "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *Id.* (quoting *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001)). These factors do not apply in every case; they should be tailored to the case as necessary and should only be applied "where they are reasonable measures of the reliability of expert testimony." *Id.* (quoting *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001)).

### III. DISCUSSION

Plaintiff moves the court to exclude the testimony of Dr. Meza-Arroyo, Mr. Hoover, and Mr. Rogers. The Court will address each in turn.

#### A. Dr. Meza-Arroyo

Dr. Meza-Arroyo specializes in "human perception and cognition, occupational biomechanics, and the effects of light and aging on the visual system." (Doc. 99-1 at 4, 22.) He

holds three degrees, including a PhD. in industrial engineering. (*Id*. at 22.) He has authored numerous publications and presentations on vehicle accidents and the role of perception in such accidents, and regularly conducts "investigations involving automobile and trucking accidents." (*Id*. at 22, 24–26.)

Dr. Meza-Arroyo prepared a report summarizing his findings and conclusions after considering "three fundamental components (i.e., the human, the environment, and the product/machine)." (*Id*. at 6.) Dr. Meza-Arroyo reviewed deposition transcripts, medical records, academic literature, and images of the RZR. (Doc. 99-1.) He also summarized the deposition testimony on which he relied. (*Id*. at 7–8.) This included a statement by Mr. Adams, the driver of the RZR at the time of the incident, that Plaintiff "woke him up at 6:30 AM the morning of the incident, and [Plaintiff] was already drinking alcohol. [Mr.] Adams stated that [Plaintiff] told him he had also not gone to bed that night." (*Id*. at 7.) Additionally, Plaintiff stated that "both he and [Mr.] Adams were drinking alcohol that day." (*Id*. at 8.) Another witness reported Plaintiff "had been drinking at the time of the accident" and Plaintiff had "stayed up having some drinks and playing Call of Duty until [they] left that morning." (*Id*.) Plaintiff also reported that "leading up to the incident, his hands were on the T-handle" of the RZR. (*Id*.)

Dr. Meza-Arroyo acknowledged the inconsistencies in the evidence of Plaintiff's alcohol consumption but concluded that Plaintiff had consumed "significant amounts of alcohol" such that he was "impaired by alcohol at the time of the subject incident." (*Id*. at 20.) He stated that "[f]rom a Human Factors perspective, this impairment diminished [Plaintiff's] ability to process visual information and react to available stimuli in the environment." (*Id*.) Further, he classified Plaintiff's impairment as "increased to severe impairment." (*Id*.) Regarding sleep, Dr. Meza-Arroyo observed that Plaintiff "did not have a full night's rest at the time of the subject incident."

(*Id*.)  He concludes that "[f]rom a Human Factors perspective, this sleep deprivation diminished [Plaintiff's] ability to identify, detect, process, and react to visual information available within the environment of the subject incident." (*Id*.) Further, Dr. Meza-Arroyo concluded Plaintiff "was, more likely than not, concomitantly impaired by alcohol and sleep deprivation at the time of the subject incident." (*Id*.) "[T]he combination of sleep deprivation and alcohol impairment have a negative additive effect on stimulus processing and overall human performance." (*Id*.) Dr. Meza-Arroyo opines that Plaintiff's "ability to react to the rollover event was significantly diminished, including a slowed reaction time and well as decreased muscle function and performance." (*Id*.)

Plaintiff seeks to exclude Dr. Meza-Arroyo's testimony based on his qualifications and the reliability of his opinions. (Doc. 58 at 3.) Plaintiff does not seem to challenge Dr. Meza-Arroyo's qualification as a human factors expert, but rather the qualification of any human factors expert to opine on whether a person was intoxicated by alcohol or sleep deprived. Plaintiff argues Dr. Meza-Arroyo "does not have any knowledge, skill, experience, training, or education in either alcohol intoxication or sleep deprivation." (*Id*. at 3.) Because Dr. Meza-Arroyo is not a toxicologist or medical doctor, Plaintiff argues "he is not qualified to review any evidence and opine, as his report does, that Plaintiff was either intoxicated or suffering from sleep deprivation at the time of the incident." (*Id*. at 3–4.) Plaintiff also argues there is "no reliable evidentiary basis" for Dr. Meza-Arroyo's opinions regarding Plaintiff's alcohol intoxication and sleep deprivation. (*Id*. at 3.) Plaintiff points to the fact that Plaintiff was not administered a blood alcohol content test, and points to inconsistencies in evidence regarding Plaintiff's alcohol consumption and sleep deprivation. (*Id*.)

Based on Dr. Meza-Arroyo's education, work experience, presentations and publications, and knowledge, the Court finds him well-qualified in the field of human factors. *See* Fed. R. Evid.

5

Case 3:22-cv-00322-CLC-JEM   Document 126   Filed 07/31/24   Page 5 of 15   PageID #: 6019

702; *Miller v. Coty, Inc.*, No. 3:14-cv-00443-CRS, 2018 U.S. Dist. LEXIS 46911, at *10 (W.D. Ky. Mar. 21, 2018). "[H]uman factors experts tend to have specialized knowledge in 'human perception and awareness' and are concerned with the interrelationship of a human's inherent capabilities and limitations with product designs and the surrounding environment." *Miller v. Coty, Inc.*, No. 3:14-cv-00433-CRS, 2018 U.S. Dist. LEXIS 46911 at *10 (quotation and citation omitted). Dr. Meza-Arroyo's report explains how intoxication and sleep deprivation factor into his areas of expertise: accident reconstruction and analysis of perception. (*See id.* at 12–19.) He relied on statements and medical reports regarding Plaintiff's alcohol consumption and lack of sleep the night before the incident as the factual basis for his opinions. (Doc. 99-1 at 7–8, 24–35.) This includes Plaintiff's statement that he and Mr. Adams had consumed alcohol the day of the incident. (*Id.* at 8.) Dr. Meza-Arroyo also considered the design and safety warnings of the RZR. (*Id.* at 9–11.) He acknowledged inconsistencies in the evidence, cited and summarized academic literature regarding the effects of alcohol and sleep deprivation on cognition and coordination, and explained how he applied scientific studies about the effects of alcohol and sleep deprivation to the evidence he reviewed. (*Id.* at 12–19.)

As *Daubert* recognized, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595. The Court finds Plaintiff's arguments do not affect the reliability of Dr. Meza-Arroyo's opinions under Rule 702. Plaintiff's motion to exclude Dr. Meza-Arroyo's testimony will be **DENIED**.

A. Mr. Hoover

Mr. Hoover is an engineer and accident reconstructionist with expertise in vehicle design. (Docs. 58 at 4; 99-2 at 1.) Mr. Hoover reviewed case materials including depositions and exhibits,

Plaintiff's expert's reports and documentation, medical records, site and vehicle documentation, and Polaris production materials. (Doc. 99-2 at 2–3.) He conducted a crash site inspection, but "the exact crash location was unknown and was not located." (*Id*. at 6.) Instead, he relied on deposition statements about the location of the incident, photographs, videos, and a map of the park where the incident occurred. (*Id*. at 6.) He also reviewed deposition statements regarding the events of the crash, and diagrams that Plaintiff and Mr. Adams drew of the crash. (*Id*. at 7–23.)

Mr. Hoover did not inspect the RZR involved in the crash. (*Id*. at 6.) He reviewed deposition statements about the alterations to the RZR and screenshots of messages between Mr. Adams and the former owner regarding alterations to the RZR at the time Mr. Adams purchased it. (*Id*.) Mr. Adams stated the roll cage of the RZR was after-market, and the former owner indicated it had an aftermarket bat cave custom cage and 32-inch tires, and thought the seats were lowered two to three inches. (*Id*. at 6–7.)

Mr. Hoover stated, "it is not possible to reconstruct the subject crash." (*Id*. at 29.) In performing his analysis, Mr. Hoover compared the specifications of the RZR involved in the incident with those of a stock RZR produced by Defendants, concluding that, for example, the tire change "could cause the vehicle to have different handling and dynamics properties as compared to when it was produced." (*Id*. at 30.) He also compared side-by-side photographs of the RZR involved in the incident and original equipment manufacturer ("OEM") ROPS. Mr. Hoover stated he used "testing, accepted reconstruction techniques and methodologies" along with his "education, training, and experience," to analyze the evidence. (*Id*. at 29.)

Plaintiff does not challenge Mr. Hoover's qualifications, but rather the reliability of five of Mr. Hoover's opinions. (Doc. 58 at 4–7.) First, Plaintiff challenges Mr. Hoover's opinion that

"[a]t the time of the crash, the [RZR] was reportedly traveling at 15–20 mph while taking a left-hand turn in at least an attempt to do a donut. Mr. Adams'[s] erratic driving, contrary to the recommended driving by Polaris caused the RZR to overturn." (Docs. 58 at 4; 99-2 at 31.) Plaintiff argues there is "no reliable evidence that Mr. Adams was attempting to do a donut," and that "[a]ny documentary evidence that contains statements to this effect is entirely unreliable and inadmissible hearsay." (Doc. 58 at 5.) Plaintiff argues Mr. Hoover's opinion is unreliable because he did not reconstruct the crash. (*Id.*)

Plaintiff cites no authority holding that testing a vehicle or reconstructing a crash are necessary to form a reliable opinion about the cause of an accident. (*See* Doc. 58.) Mr. Hoover visited the park where the crash occurred, reviewed maps and diagrams of the location of the crash, and deposition statements and medical records discussing the circumstances of the crash. (Doc. 99-2 at 6–22.) While Mr. Hoover acknowledges inconsistencies regarding the circumstances of the crash, depositions, and medical records that he reviewed describe Mr. Adams attempting to do a "donut," attempting to turn left at a speed of approximately 15–10 miles per hour and hitting a rock as he turned. (Doc. 9-2 at 5–6, 9.) Factual disagreements on these issues do not impact Mr. Hoover's ability to rely on the materials he reviewed. Further, "[f]ederal Rule of Evidence 703 permits experts to base their testimony on hearsay, provided that facts that are otherwise inadmissible are not disclosed to the jury by the expert." *See White v. MPW Indus. Servs.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006).

The Court finds that Mr. Hoover's education, training, and experience, and review of vehicle rollover studies, case evidence, and product-specific materials make his testimony reliable on the issue of how the altered RZR performed under the conditions and circumstances described in this case. His expertise does not, however, qualify him to determine Mr. Adams's intent in

8

Case 3:22-cv-00322-CLC-JEM   Document 126   Filed 07/31/24   Page 8 of 15   PageID #: 6022

maneuvering the altered RZR in the manner he did. Mr. Hoover's testimony will not be excluded to the extent he opines on the altered RZR's performance under the conditions and circumstances described in this case—including the speed and direction of the vehicle, terrain, and weather. Mr. Hoover's testimony will be excluded as to Mr. Adams's intent or attempt to do a "donut."

Second, Plaintiff challenges Mr. Hoover's opinion that "the weight of the evidence shows that [Plaintiff] was not using the hand-hold bar at the time of the rollover," and that "had [Plaintiff] properly grasped the RZR's handhold bar, he would not have been injured." (Docs. 58 at 5; 99-2 at 31.) Plaintiff argues "Mr. Hoover provides no explanation for the basis for this opinion." (Doc. 58 at 5.) Plaintiff argues Mr. Hoover's opinion is unreliable because there is no direct source of the factual basis, and Mr. Hoover "did not conduct any testing to establish whether or not [Plaintiff] would or would not be able to hold on to the hand hold device in a rollover." (Doc. 58 at 6.) Defendants argue in opposition that Mr. Hoover "did not opine as to [Plaintiff's] ability to continue to grip the handholds in this particular rollover incident," but rather "that [Plaintiff's] actual failure to do so here caused his injury." (Doc. 67 at 17.)

There is some evidence that Plaintiff was not holding the hand hold at the time of the crash. (*See* Doc. 99-2 at 12–13.) But while Defendants attempt to parse Mr. Hoover's opinion, Mr. Hoover conclusion states "had [Plaintiff properly grasped the RZR's handhold bar, he would not have been injured." (Doc. 99-2 at 31.) This assumes that a "proper" grasp means not only holding the hand hold, but also maintaining grip on the RZR handhold bar during a rollover event. (*See* Doc. 99-2 at 31.) Mr. Hoover's opinion appears to rely on Mr. David Dillon's deposition testimony that in Polaris' experience, when a person continues to hold onto handhold bars during a rollover, "accidents tend not to occur." (*Id.* at 21.) Mr. Hoover's opinion also appears to be unsupported by scientific method or any specific analytical technique applied to the facts of this case in a

9

Case 3:22-cv-00322-CLC-JEM   Document 126   Filed 07/31/24   Page 9 of 15   PageID #: 6023

manner that relies on his expertise. The Court finds Mr. Hoover's opinion that "[h]ad [Plaintiff] properly grasped the RZR handhold bar, he would not have been injured" fails to meet the standard of reliability required under Rule 702. Mr. Hoover's testimony on this point will be excluded.

Third, Plaintiff challenges Mr. Hoover's opinion that "[i]f [Defendants] had offered window nets as a standard or optional accessory, it would not have made a difference in the outcome of this crash." Plaintiff "stated that even if the Modified RZR had window nets, he would not have used them in general, or specifically, the day of the crash." (Doc. 99-2 at 31.) Plaintiff argues Mr. Hoover's opinion regarding the impact of offering window nets is based solely on Mr. Adams's statement that he would not have used them. (Doc. 58 at 6.) Plaintiff asserts this is an "attempt to use an expert to parrot the opinion of an unqualified layperson because no testing was done and there is no reliable information to rely upon in forming such an opinion." (*Id.*) Defendants argue Mr. Hoover relies not only on Mr. Adams's statement, but also on deposition testimony from Mr. Dillon of Polaris, that "even when nets are available, customers just don't use them," and "Polaris offered nets as an accessory for a short period of time, and they did not sell because people didn't want to use them." (Docs. 99-2 at 22; 67 at 17–18.)

Mr. Hoover's opinion appears to be based on both Mr. Adams's statement and deposition testimony from Mr. Dillon. It is not apparent, however, how this opinion is the product of Mr. Hoover applying his expertise to the facts. This testimony fails under Rule 702(a), as Mr. Hoover's opinion on the issue of whether offering nets would have prevented Plaintiff's injury will not help the trier of fact to understand the evidence or determine a fact in issue. Fed. R. Evid. 702(a). Mr. Hoover's testimony on this point will be excluded.

Fourth, Plaintiff challenges Mr. Hoover's opinion that "[t]he modified, lowered, aftermarket [rollover protection system ("ROPS")] system lowered the roof and changed the

dimensions of the window opening, as compared to an OEM ROPS system. Any window netting made for an OEM ROPS system would not have fit the modified subject vehicle." (Docs. 58 at 6; 99-1 at 31.) Plaintiff argues Mr. Hoover did not inspect the RZR or conduct any testing or measurements. (Doc. 58 at 6.) Plaintiff contends Mr. Hoover's opinion is based solely on statements that modifications lowered the roof and changed the window opening dimensions but does not demonstrate how this proves that "any window netting" made for an OEM system would not fit. (*Id*.) Plaintiff argues Mr. Hoover also "implies that the modified rollover system does not comply with industry standards when in fact it may be perfectly compliant." (*Id*.) He asserts this will "mislead or confuse the jury and should be excluded." (*Id*.)

Defendants respond that the opinion regarding whether window nets would fit is "not listed among [Mr. Hoover's] primary opinions, and states "Mr. Hoover will not independently opine regarding this point at trial." (Doc. 67 at 18.) Given that Defendants concede that Mr. Hoover's opinion is based on the opinion of Mr. Rogers, and not his own analysis, the Court finds the testimony fails under Rule 702(a). Mr. Hoover's testimony on this point will be excluded.

With regard to Plaintiff's argument that Mr. Hoover implies the RZR did not comply with industry standards after modification, Defendants state Mr. Hoover's opinion is "that there is no testing demonstrating either compliance or non-compliance—a premise [Plaintiff] apparently agrees with." (Doc. 67 at 18.) He contends this testimony would help the jury avoid assuming the RZR complied with industry standards. Given Mr. Hoover's expertise in vehicle engineering and familiarity with industry standards, the Court finds no basis to conclude that this opinion is unreliable. Mr. Hoover's testimony on this point will not be excluded.

Finally, Plaintiff challenges Mr. Hoover's opinion that "[t]he inclusion of "cab nets," "window nets," "upper-door nets," or other passive barrier above the RZR door does not represent

11

a safer design and would not have prevented [Plaintiff's] injury in the subject crash." (Docs. 58 at 7; 99-2 at 32.) Plaintiff argues Mr. Hoover relies "primarily, if not entirely" on Mr. Adams's statement that he would not use window nets even if they were supplied. (Doc. 58 at 7.) Plaintiff asserts the opinions are speculative, conclusory, or based on Mr. Adams's opinions. (*Id*.) Defendants did not respond specifically to this challenge. (*See* Doc. 67.) Mr. Hoover's opinion appears to be based on deposition testimony from Mr. Dillon and Mr. Dobmeier. (*See* Doc. 99-2 at 28.) It is not apparent that this opinion is the product of Mr. Hoover applying his expertise to the facts. This testimony fails under Rule 702(a), as Mr. Hoover's opinion on the issue of whether nets or other passive barriers offer a safer design and would have prevented Plaintiff's injury will not help the trier of fact to understand the evidence or determine a fact in issue. Fed. R. Evid. 702(a). Mr. Hoover's testimony on this point will be excluded.

For the above reasons, Plaintiff's motion to exclude Mr. Hoover's testimony will be **GRANTED IN PART** and **DENIED IN PART**. The Motion will be **GRANTED** to the extent Mr. Hoover's testimony on the following opinions will be excluded:

1. Whether Plaintiff would have been injured had he grasped the RZR's handhold bar;
2. Whether Defendants offering window nets as a standard or optional accessory would have made a difference in the outcome of this crash;
3. Whether any window netting made for an OEM ROPS system would have fit the modified RZR involved in the crash; and
4. Whether inclusion of cab nets, window nets, upper-door nets, or other passive barrier above the RZR door represent a safer design, and whether they would have prevented Plaintiff's injury in the subject crash.

### B. Mr. Rogers

Mr. Rogers is an engineer and accident reconstructionist with "experience in design, test and analysis, safety, and manufacturing." (Docs. 58 at 7; 99-3 at 3.) Plaintiff does not challenge Mr. Rogers's qualifications, but rather the reliability of two of Mr. Rogers's opinions. (Doc. 58 at 7–8.) First Plaintiff challenges Mr. Rogers's testimony that "the use of an aftermarket roll cage precluded retrofitting a Polaris window or upper-door net to the aftermarket roll cage." (*Id*. at 7.) Plaintiff argues Mr. Rogers did not "conduct any testing or measurements using windows or upper door nets and the fact that the dimensions of the window opening are different does not automatically preclude the use of such safety devices or retrofitting them to the aftermarket roll cage." (Doc. 58 at 8.) Defendants respond that both opinions Plaintiff moves to exclude are rebuttal opinions. Regarding the first opinion, Defendants assert Mr. Rogers was responding to the report by Plaintiff's expert, Dr. Kress, "which mentioned nets as possible design features." (Doc. 67 at 19.) Mr. Rogers used measurements to "conclude that a Polaris-manufactured window or upper-door net would not fit" the RZR after it had been modified. (*Id*. at 20.) Defendants assert Mr. Rogers's conclusion that a net designed to fit a window opening of one size would not fit a window opening of another size does not require testing. (Doc. 67 at 20.)

Second, Plaintiff argues there is no reliable basis for Mr. Rogers's opinion that "there is no evidence to indicate that a window or upper-door net would have prevented the subject injury, or an arm injury in general." (*Id*. at 8; Doc. 99-3 at 18.) Plaintiff argues "Mr. Rogers did not conduct any testing using windows or upper-door nets" and states this is "an attempt by an expert to improperly assert an opinion on the central dispute in the case without any reliable basis for the opinion." (Doc. 58 at 8.) Defendants respond that it is appropriate for Mr. Rogers to respond in rebuttal that there is a lack of evidence on the question of whether a window or upper-door net

13

would have prevented the subject injury. (Doc. 67 at 20.) Mr. Rogers "applied his expertise to observe the deficiencies in Dr. Kress's opinion—specifically, that no literature, testing, or market evidence supported the notion that this was a safer alternative design." (*Id*.) Defendants argue that no testing is required to explain why Dr. Kress's conclusion is incorrect. (*Id*.) Further, Mr. Rogers provided "literature supporting the opinion that a window or upper-door net may not have prevented the injury." (*Id*.) "Applying his industry knowledge, he then explained that a net design would be less capable than a closed window of upper extremity containment given that it is not as laterally rigid." (*Id*.) Defendants contend this was more than was required of Mr. Rogers to testify as a rebuttal expert.

When functioning as a rebuttal expert, experts "respond[] to the content of [the original] expert witness' report and opinions" and are not required to conduct "independent" analysis. *E.E.O.C. v. Tepro, Inc.,* 133 F. Supp. 3d 1034, 1047 (E.D. Tenn. 2015). A "lack of testing done in support of [a rebuttal expert's] alternative propositions does not preclude him from offering . . . opinions. *Drips Holdings, LLC v. Teledrip LLC*, No. 5:19-CV-02789-JRA, 2022 U.S. Dist. LEXIS 227356, at *25 (N.D. Ohio Aug. 30, 2022) (citation omitted). The opinions Plaintiff moves to exclude are based on testing and evaluation done by Dr. Kress as well as his own expertise and familiarity with the academic literature in his field. Accordingly, the Court finds there is a reasonable basis for Mr. Rogers's expert opinion. Plaintiff's motion to exclude Mr. Rogers's testimony will be **DENIED** to the extent Mr. Rogers will testify as a rebuttal expert.

IV. <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's motion (Doc. 58) will be **GRANTED** in part and **DENIED** in part. Plaintiff's motion will be **GRANTED** to the extent Mr. Hoover's testimony on the following opinions will be excluded:

1. Whether Plaintiff would have been injured had he grasped the RZR's handhold bar;

2. Whether Defendants offering window nets as a standard or optional accessory would have made a difference in the outcome of this crash;

3. Whether any window netting made for an OEM ROPS system would have fit the modified RZR involved in the crash; and

4. Whether inclusion of cab nets, window nets, upper-door nets, or other passive barrier above the RZR door represent a safer design, and whether they would have prevented Plaintiff's injury in the subject crash.

Plaintiff's motion will be **DENIED** on all other grounds.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**